**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MARJORIE WAGONER, et al.,                    )
                                             )
                      Plaintiffs,            )
                                             )
v.                                           )          **Case No. 07-1229-JTM**
                                             )
PFIZER, INC.,                                )
                                             )
                      Defendant.             )
                                             )
                                             )

**MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

   1. Defendant's motion to stay discovery (Doc. 41);

   2. Plaintiffs' motion to compel (Doc. 42); and

   3. Defendant's motion for an extension of time (Doc. 57).

The court's rulings are set forth below.

**Background**

This is an age discrimination case under the ADEA, 29 U.S.C. § 621, et seq.[1]  Highly

summarized, plaintiffs allege that Pfizer engaged in deceptive tactics to justify its termination

of employees over 40 years of age.  Plaintiffs contend that one of Pfizer's key tactics was to

---

[1]

   Plaintiffs Wagoner and Kirkpatrick also assert state law claims for intentional
infliction of emotional distress.

falsely accuse an employee of violating company policies in order to establish a pretext for termination.

For example, plaintiff Marjorie Wagoner began working for Pfizer in Wichita, Kansas in 1980 as a sales representative. Following a corporate reorganization in 2005, Wagoner's immediate supervisor, Clark Mohar, began making derogatory comments about plaintiff's age (55 years at the time) and "made clear that he preferred training and supervising younger sales representatives." Complaint, Doc. 1, p. 2.

In June 2006, Wagoner was summoned without explanation to Pfizer's Chicago regional office. When Wagoner arrived for the meeting, she was confronted by four Pfizer representatives and accused of altering dates on certain "starter" (drug sample) forms to balance out her daily sales activities. Notwithstanding Wagoner's adamant denials, Pfizer sent a July 10, 2006 letter to the United States Food and Drug Administration (FDA) alleging that plaintiff admitted falsifying the dates on her starter forms. When Wagoner received a copy of the letter, she immediately contacted Pfizer to point out that she had never admitted changing the dates on her starter forms. Pfizer terminated Wagoner on July 14, 2006, prior to the conclusion of its audit and without affording Wagoner an opportunity to verify the accuracy of the starter forms.

After her termination, Wagoner contacted the medical providers who were the subject of the disputed starter forms. All of the providers verified the accuracy of the dates and their signatures. **After** plaintiff's termination, Pfizer surveyed the medical providers to verify their signatures and to confirm the receipt of the sample quantities listed on the indicated

dates. The survey replies confirmed plaintiff's version and Pfizer notified the FDA on August 10, 2006 that "we have decided to conclude this particular inquiry." Notwithstanding knowledge that the allegations against Wagoner were false, Pfizer refused to rehire plaintiff and replaced her with a younger employee.

Similarly, Plaintiff Karen Kirkpatrick was 54 years old in June 2005 when her new supervisor, Geoff Holt, began making derogatory remarks about Kirkpatrick's age. On July 20, 2006, Kirkpatrick was summoned without explanation to Pfizer's Chicago regional office and, like Wagoner, falsely accused of changing starter form dates. Kirkpatrick was terminated without an opportunity to confirm the accuracy of her starter forms and replaced with a less experienced individual approximately 25 years old.

The third plaintiff, Ernie Krull, started working for Pfizer in 2003. In December 2005 and February 2006, Krull was summoned to Pfizer's New York office and questioned extensively about his expense reports. In both meetings, Krull denied any wrongdoing. Following the New York interviews, Krull was given a 4.5% salary raise for "exemplary job performance" and awarded free airline tickets. A few weeks after the salary increase, Krull was terminated for violation of "company policy." Notwithstanding his requests for clarification, Krull was never informed which policy he allegedly violated. Krull, age 52, was replaced by a younger employee.[2]

---

[2]

Although Pfizer agrees that investigations were conducted and that plaintiffs were terminated, the facts underlying the terminations are disputed. The "background" is based on allegations in plaintiffs' complaint and merely provides context for the claims in this lawsuit and the discovery disputes.

### Defendant's Motion to Stay Discovery (Doc. 41)

Defendant moves to stay discovery pending a ruling on Pfizer's motion to sever and transfer the claims of plaintiffs Kirkpatrick and Krull.[3]  Defendant's arguments are not persuasive because the discovery conducted in this case will be relevant and useful to plaintiffs Kirkpatrick and Krull regardless of whether their claims are severed and transferred to district courts in other jurisdictions.

**IT IS THEREFORE ORDERED** that defendant's motion to stay discovery **(Doc. 41-1)** is **DENIED.**

In the alternative, defendant requests that the court extend the current discovery schedule by 180 days.  Plaintiffs oppose the request, arguing that a 30-day extension is more appropriate.  The court is persuaded that a modification of the discovery schedule is warranted because of (1) a pending motion to compel (discussed below) and (2) plaintiffs' recent supplemental disclosures (adding 32 potential witnesses).  However, the length of the extension will be determined after the parties have had an opportunity to review the rulings in this opinion.

**IT IS THEREFORE ORDERED** that defendant's alternative motion for an extension of time **(Doc. 41-2)** is **GRANTED IN PART.**  The length of the extension will be established in a subsequent order.

---

[3]

Kirkpatrick was employed and worked in Oklahoma.  Krull was employed and worked in Arizona.  Pfizer seeks to transfer the claims of Kirkpatrick and Krull to courts in Oklahoma and Arizona.

**Plaintiffs' Motion to Compel (Doc. 42)**

Plaintiffs move to compel complete answers and responses to their "First Set of Interrogatories and First Request for Production of Documents." Stripped of prolixity, the parties' disputes concern (1) Pfizer's claim of the attorney-client privilege and/or work product doctrine for certain documents and (2) the relevance and burden of gathering the information requested in Interrogatory Nos. 4, 5, and 6 and Production Requests 2, 15, 17, and 31. The parties' arguments are discussed in greater detail below.

**Attorney-Client Privilege and Work Product Doctrine**

The parties' disputes over the attorney-client privilege and work product doctrine involve two categories of documents. The first category is comprised of notes and summaries prepared by Sarah Alper, a non-attorney. Plaintiffs argue there is no evidence that any attorney ever received or were the intended recipient of the notes.[4] The second category of documents is comprised of e-mails, notes of telephone conversations and a memo showing that at least one recipient of the document was an attorney. Plaintiffs contend that the mere fact an attorney was a recipient of a document or communication does not establish the attorney-client privilege or work product doctrine.

The standards for evaluating whether a communication is protected by the attorney-client privilege are well established:

> [T]he essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal

---

[4]

The privilege log indicates that the recipient of the notes was the "file."

advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection be waived.

The privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.  The privilege also protects advice given by the lawyer in the course of representing the client.  The privilege protects communications with in-house counsel as well as outside attorneys.  The privilege, however, is to be extended no more broadly than necessary to effectuate its purpose.

Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice.  The focal point of the protection afforded by the attorney-client privilege lies with communications between attorneys and their clients.  And, although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.  There must be a connection between the subject of the communication and the rendering of legal advice for the attorney-client privilege to shield the communication from disclosure.  Legal advice must predominate for the communication to be protected.  The privilege does not apply where the legal advice is merely incidental to business advice.  There is also a distinction between a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not make all communications during the meeting privileged.

In re Universal Service Fund Telephone Billing Practices Litigation, 232 F.R.D. 669, 674 (D. Kan. 2005)(citations and internal quotation marks omitted).  Importantly for this case, responses by employees to counsel's questions for the purpose of providing legal advice to the corporation are protected by the attorney-client privilege.  Upjohn Co. v. United States, 449 U.S. 383, 397 (1981)(attorney-client privilege protects notes taken by counsel during employee interviews in the course of an internal investigation).

The standards for application of the work product doctrine are similarly well

established:

> The work product doctrine, which is embodied in Rule 26(b)(3)
> of the Federal Rules of Civil Procedure, protects from discovery
> documents, things and mental impressions of a party or his
> representative, particularly his attorney, developed for or in
> anticipation of litigation or trial.  The purpose of the doctrine is to
> permit attorneys to prepare for litigation with a certain degree of
> privacy, and without undue interference or fear of intrusion or
> exploitation of one's work by an adversary.  In other words, the
> doctrine is not intended to protect investigative work unless done so
> under the supervision of an attorney in preparation for the real and
> imminent threat of litigation or trial. Work prepared in the ordinary
> course of business and inserted into a protected document may still be
> subject to disclosure after redaction of any privileged material.

> Thus, the work product doctrine only applies to those
> documents and tangible things prepared in anticipation of litigation,
> and in order for the discovery limitation to apply, there must be a
> substantial probability that litigation will ensue at the time the
> documents were drafted.  Certainly, by implication the rule precludes
> any idea of extending the work product doctrine to reports or
> statements, even if written, obtained by the client or his investigators
> which are not prepared under the supervision of an attorney in
> preparation for trial.

Williams v. Sprint/United Management Co., 245 F.R.D. 660, 668-669 (D. Kan.,

2007)(citations and internal quotation marks omitted).

With respect to the notes and summaries prepared by Sarah Alper, the court is

satisfied that the documents are protected by the attorney-client privilege. Pfizer assigned

Lisa Shrayer, an attorney in Pfizer's Corporate Compliance Group, to investigate expense

account violations by plaintiff Krull and the nature of his relationship with a doctor.  Sara

Alper, a member of Pfizer's internal audit group, was assigned to assist Shrayer in her

investigation.  In the course of the investigation Shrayer interviewed Krull, John Allard

(Krull's former supervisor), and Marco Cunningham (Krull's co-worker). At the beginning of each interview, Shrayer informed the interviewees of her status as an attorney for Pfizer and that all communications during the interview were protected by the attorney-client privilege. Alper attended the interviews and took notes. At the conclusion of the interviews, Alper prepared summaries for Shrayer which counsel used to provide legal advice to Pfizer.

As noted above, responses by corporate employees to counsel's questions for the purpose of providing legal advice are protected by the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383, 397 (1981). Because the responses by Krull, Allard, and Cunningham are protected by the attorney-client privilege, Alper's notes of the privileged conversations are also protected by the attorney-client privilege.[5]

Alper's role was not unlike that of a paralegal, assisting in the gathering and organizing of information for an attorney. In addition to taking notes during the above mentioned interviews, Alper contacted other Pfizer employees at Shrayer's direction for information and made notes of their comments "for the file." Because Alper was gathering information under counsel's direction, her notes of the phone calls are protected by the attorney-client privilege. Alper also made "handwritten notes" on a Costco receipt and "detail reports" of Krull's expenses. The handwritten notes are protected by the

---

[5]

The notes are not verbatim and include some interpretation by Alper.

attorney-client privilege.[6]

The second category of challenged documents consists of various notes and memos that, although sent or received by an attorney, were also discussed with Pfizer management employees. The court has reviewed the privilege log as well as Pfizer's exhibits and is satisfied that the documents are protected by the attorney-client privilege. This is not a situation where counsel's participation was merely a guise to cloak routine business discussions with the attorney-client privilege. Instead, the predominate purpose of the communications was to secure legal advice concerning certain conduct by Mr. Krull. Moreover, the non-lawyer Pfizer employees who participated in the communications were appropriate recipients of the privileged communications.

The parties also debate whether documents were "prepared in anticipation of litigation" for purposes of the work product doctrine.[7] The court is satisfied that documents prepared by Shrayer and Alper on or after February 7, 2006 were prepared in anticipation of litigation. Krull made statements during his February 7 interview concerning his actions related to pending government investigations and private party claims. Accordingly, the documents created by Shrayer and Alper after the interview

---

[6]

However, the receipt itself would not be protected from disclosure. Moreover, Pfizer presents no evidence that the "detail reports" Alper reviewed are protected by any privilege.

[7]

The majority of documents are covered by the attorney-client privilege. Neither party describes the specific documents that are the subject of only the work product privilege in any detail. Accordingly, the court limits its analysis to the parties' argument as to whether materials were "prepared in anticipation of litigation."

were prepared in reasonable anticipation of litigation. Under the circumstances, plaintiffs' motion to compel documents designated as attorney-client privileged or work product shall be DENIED.

**Interrogatory Nos. 4 and 5**

Interrogatory No. 4 seeks detailed information on all persons hired by Pfizer since January 1, 2004 for sales representative jobs located in Kansas, Oklahoma, and Arizona. If the person no longer works for Pfizer, plaintiffs request detailed information concerning the termination and whether a severance payment was provided. Interrogatory No. 5 seeks similar detailed information for all sales representatives in Kansas, Oklahoma, and Arizona who have been terminated since January 1, 2004.

Pfizer argues that the "hiring" information requested in Interrogatory No. 4 is overly broad and lacking in relevance because this case is based on claims of discriminatory "termination" rather than discriminatory "hiring." Plaintiffs contends that the information is relevant because it may show that Pfizer had a corporate-wide animosity toward older employees. Pfizer counters that the "corporate-animosity" argument is not appropriate because plaintiffs concede that they are not pursuing a "pattern and practice" theory in this case. Plaintiffs agree that they are not pursuing a traditional "pattern and practice" class action theory; however, they do seek to prove their claims of discrimination by showing a common plan or scheme to eliminate older employees. (Doc. 61, p. 5).

The phrase "pattern and practice" is not a magical incantation and plaintiffs'

choice of words is not fatal to their discovery requests.  Clearly, plaintiffs seek to bolster

their claims of intentional discrimination by showing discriminatory treatment of other

employees.  See, e.g., Sprint/United Management Co. v. Mendelsohn, ___U.S. ___, 128

S. Ct. 1140, 1147 (2008) (relevance of evidence of discrimination by other supervisors

is fact based and depends on many factors).  However, the court agrees that plaintiffs'

request for "hiring" information is overly broad and not reasonably tailored to the claims

in this case.[8]   This is a "termination" case and a blanket request for information

concerning recently hired employees, without more, suggests a fishing expedition.  More

importantly, plaintiffs have failed to show how the detailed information requested in

Interrogatory No. 4 would support their claims of that age discrimination in the

termination process.  Simply alleging that plaintiffs seek evidence of corporate animosity

is not sufficient.[9]  Because the burdens and expense of the proposed discovery outweigh

its likely benefit, considering the needs of the case, plaintiffs' motion to compel answers

to Interrogatory No. 4. shall be DENIED.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Interrogatory No. 5 requests detailed information concerning employees who were

---

[8]

Interrogatory No. 4 also contains a request for "termination" information.  The information requested concerning terminations in Interrogatory No. 4 is duplicative of Interrogatory No. 5 and denied.

[9]

The court is left to speculate about how detailed information concerning the new hires supports plaintiffs' theory of age discrimination.  The information requested, although detailed, would not support any meaningful statistical analysis of age discrimination in the hiring process, let alone in the termination process.  In order to generate meaningful statistics concerning hiring, one would need to start with the applicable pool of applicants before evaluating the persons actually hired.

**terminated by Pfizer** after January 1, 2004 in the states where plaintiffs worked. Pfizer

produced information concerning employees who were discharged for policy violations

or misconduct.   However, Pfizer refuses to provide information concerning other

employees who were terminated because of (1) layoffs, (2) retirement, or (3) reductions-

in-force.   The court agrees information concerning persons that **voluntarily** retire is

irrelevant.   However, information concerning **involuntary** terminations is reasonably

calculated to lead to admissible evidence of age discrimination.[10] Accordingly, plaintiffs'

motion to compel Interrogatory No. 5 is GRANTED IN PART.   Pfizer shall provide the

requested information for employees that were **involuntarily terminated** after January

1, 2004 in the three states where plaintiffs worked.

**Interrogatory No. 6 and Production Request No. 2**

Interrogatory No. 6 requests detailed information concerning all administrative

charges and lawsuits filed against Pfizer since January 1, 2002 alleging age

discrimination.   Similarly, Production Request No. 2 seeks copies of the administrative

charges or complaints since January 1, 2002 alleging age discrimination. Pfizer produced

information responsive to age discrimination complaints from sales representatives in the

three states but refuses to provide information concerning non-sales representatives and

---

[10]

    For example, evidence that Pfizer terminated older employees for a reduction in
force at a statistically higher rate than younger employees might support plaintiffs' theory
that Pfizer had a corporate animosity toward older employees.

employees outside the three states.  During the meet-and-confer process, plaintiffs offered to limit the requests to the individuals who made the decision to terminate the plaintiffs. Pfizer objected to this modification and plaintiffs move to compel.

Pfizer opposes the motion to compel, arguing that non-sales representatives are not similarly situated.  Pfizer also argues that it would also be unduly burdensome to gather such information because it does not maintain a central database of lawsuits or charges organized by (1) the decision-maker or (2) the type of charge or lawsuit.  Because of its lack of organization, Pfizer would have to review **all** charges or lawsuits filed against Pfizer since 2002.

The court is not persuaded by Pfizer's argument that the only relevant charges of age discrimination are those made by sales representatives in the three state area.  The more relevant inquiry is whether the managers or supervisors who made the decision to terminate plaintiffs have a history of discriminating against Pfizer employees because of age.  Plaintiffs' modified discovery requests are reasonably calculated to lead to such evidence of age discrimination.

Pfizer's arguments of undue burden are also not persuasive.  First, it is inconceivable that a company of Pfizer's size would not have a system capable of distinguishing between, for example, product liability claims and employee discrimination claims.  More importantly, Pfizer presents no evidence of the number of claims or charges it would need to review in order to answer the interrogatory and production request.  The failure to provide evidence of the "undue burden" is fatal to

-13-

Pfizer's argument.[11]  Accordingly, plaintiffs' motion to compel complete responses to Interrogatory No 6 and Production Request No. 2, as modified by plaintiff, shall be GRANTED.  Pfizer shall answer the interrogatory and production request for those individuals who made the decision to terminate plaintiffs.

**Production Request Nos. 15, 17, and 31**

Production Request Nos. 15, 17, and 31 seek the personnel files, including the "starter files," for (1) the employees who replaced Wagoner and Kirkpatrick and (2) Clark Mohar (Wagoner's immediate supervisor). Pfizer opposes the request, arguing that the requested information is irrelevant.

The court is satisfied that information sought by the production requests is relevant. Evidence that the "starter files" for (1) the replacement employees and (2) Clark Mohar contain discrepancies similar to those alleged against Wagoner and Kirkpatrick would support the inference of a "pretext."  Accordingly, plaintiffs' motion to compel Production Request Nos. 15, 17, and 31 shall be GRANTED.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 42)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings set forth

---

[11]  The simplest starting point would be to ask the individuals who made the decision to terminate plaintiffs to disclose the administrative charges or lawsuits they have been involved in where age discrimination has been alleged.  Such an approach negates Pfizer's assertion that "review of the documentation underlying all charges ... would require hundreds of man-hours."  The only reason these two discovery requests are burdensome is because Pfizer approaches them in a manner most calculated to create a burden.

above.  Pfizer shall provide answers to the interrogatories and production requests by

**April 11, 2008.**

### Defendant's Motion for an Extension of Time (Doc. 57)

Pfizer moves for a 30-day extension of time (February 29 to March 31, 2008) to

provide its expert disclosures.  (Doc. 57).  Plaintiffs oppose the request, arguing that the

delay is unnecessary.

Pfizer's justifications for the 30-day extension are particularly compelling.

However, because the Scheduling Order is being revisited based on the discovery rulings

herein, the motion shall remain under advisement.

### Scheduling Conference

The parties shall confer and submit their recommendations for revisions to the

scheduling order by letter on or before **April 4, 2008.**  A scheduling conference may be

set after review of the parties' recommendations.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not

encouraged.  The standards governing motions to reconsider are well established.  A

motion to reconsider is appropriate where the court has obviously misapprehended a

party's position or the facts or applicable law, or where the party produces new evidence

that could not have been obtained through the exercise of reasonable diligence.

Revisiting the issues already addressed is not the purpose of a motion to reconsider and

-15-

advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 26th day of March 2008.

S/ Karen M. Humphreys

_____

KAREN M. HUMPHREYS
United States Magistrate Judge